

# COMMONWEALTH of VIRGINIA

POST OFFICE BOX 2452

### *Secretary of the Commonwealth*

RICHMOND, VIRGINIA 23218-2452

NOTICE OF SERVICE OF PROCESS

Catherine H. Goldsmith
140 S. Lake Avenue, Suite 349
Pasadena, CA  91101

Jay Johnson and Margie Johnson

vs.

Catherine H. Goldsmith

**Summons and Complaint**

Dear Sir/Madam:

You are being served with the enclosed notice under section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for Service of Process.

If you have any questions about this matter, PLEASE contact the CLERK of the enclosed/below mentioned court or any attorney of your choice.  Our office does not accept payments on behalf of debts. The Secretary of the Commonwealth's ONLY responsibility is to mail the enclosed papers to you.

COURT:
County of Madison
Madison Circuit Court
PO Box 220
Madison, VA 22727-0220
540 9486888

Service of Process Clerk
Secretary of the Commonwealth's Office

# AFFIDAVIT FOR SERVICE OF PROCESS ON THE SECRETARY OF THE COMMONWEALTH

Commonwealth of Virginia

Case No. ..............................................................

Madison County ........................................................ Circuit Court

Jay Johnson and Margie Johnson                  v.                  Catherine H. Goldsmith

140 S. Lake Avenue, Suite 349

Pasadena, CA 91101

---

TO THE PERSON PREPARING THIS AFFIDAVIT: You must comply with the appropriate requirements listed on the back of this form.

Attachments:   ☒ Summons and Complaint                    ☐ Notice

---

I, the undersigned Affiant, state under oath that

☒ the above-named defendant                                       ☐

whose last known address is     ☒ same as above ☐ .............................................................

1.  ☒ is a non-resident of the Commonwealth of Virginia or a foreign corporation and Virginia Code § 8.01-328.1(A) applies (see NON-RESIDENCE GROUNDS REQUIREMENT on reverse).

2.  ☐ is a person whom the party seeking service, after exercising due diligence, has been unable to locate (see DUE DILIGENCE REQUIREMENT ON BACK)

.................................... is the hearing date and time on the attached process or notice.

17 March 2010
DATE                    ☐ PARTY ☒ PARTY'S ATTORNEY ☐ PARTY'S AGENT ☐ PARTY'S REGULAR AND BONA FIDE EMPLOYEE

State of Virginia         ☐ City ☒ County of Culpeper

............, subscribed and sworn to before me this day by     J. Michael Sharman
                                                                PRINT NAME OF SIGNATORY

....... 2010        Kristin Thomas Fox
DATE                    ☐ CLERK  ☐ MAGISTRATE  ☒ NOTARY PUBLIC
                    Notary Registration No. 7192844   My commission expires: May 31, 2012

....... the date of filing of the certificate of compliance is requested and a self-addressed stamped envelope is provided.

....... TO THE RECIPIENT from the Office of the Secretary of the Commonwealth of Virginia: ...... being served with this notice and attached pleadings under Section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for Service of Process. The Secretary of the Commonwealth's ONLY responsibility is to mail, by certified mail, return receipt requested, the enclosed papers to you. If you have any questions concerning these documents, you may wish to seek advice from a lawyer.

SERVICE OF PROCESS IS EFFECTIVE ON THE DATE THAT THE CERTIFICATE OF COMPLIANCE IS FILED WITH THE ABOVE-NAMED COURT.

---

## CERTIFICATE OF COMPLIANCE

I, the undersigned, Clerk in the Office of the Secretary of the Commonwealth, hereby certify the following:

1.  On MAR 2 3 2010 ........................................, legal service in the above-styled case was made upon the Secretary of the Commonwealth, as statutory agent for persons to be served in accordance with Section 8.01-329 of the Code of Virginia, as amended.

2.  On APR 0 5 2010 ......................................, papers described in the Affidavit were forwarded by certified mail, return receipt requested, to the party designated to be served with process in the Affidavit.

SERVICE OF PROCESS CLERK, DESIGNATED
BY THE AUTHORITY OF THE SECRETARY OF THE COMMONWEALTH

FORM CC-1418 (MASTER, PAGE ONE OF TWO) 11/07
VA. CODE §§ 8.01-301, -310, -329; 55-218.1; 57-51

**VIRGINIA: IN THE CIRCUIT COURT FOR THE COUNTY OF MADISON**

| | |
|---|---|
| **JAY JOHNSON**<br>**And**<br>**MARGIE JOHNSON,** | )<br>)<br>)<br>) |
| **Plaintiffs** | )<br>) |
| **v.** | )   Case No. C11000480-00<br>) |
| **ROBERT M. GOLDSMITH,**<br>**in his individual capacity** | )<br>)<br>) |
| **And** | )<br>) |
| **CATHERINE H. GOLDSMITH**<br>**in her individual capacity**<br>**Defendants.** | )<br>)<br>) |
| **Serve at:**<br>**Secretary of the Commonwealth**<br>**ATTN:**<br>**Service of Process Department**<br>**Post Office Box 2452**<br>**Richmond, Virginia 23218-2452**<br>**AND**<br>**140 S. Lake Avenue, Suite 349**<br>**Pasadena, California 91101**<br>**AND**<br>**425 Crestglen Road**<br>**Glendora, Ca. 91741-2173** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Filed in the Clerk's Office of the Circuit Court of Madison County on the 17th day of March, 2010, at 4:25 o'clock P. M.

Teste:

M.E. Smith
Clerk/Deputy Clerk

## COMPLAINT

Comes now the Plaintiffs Jay Johnson and Margie Johnson, by counsel, and for their Complaint, state as follows:

2

## JURISDICTIONAL BACKGROUND

1.    Plaintiffs Jay Johnson and Margie Johnson at all relevant times have resided at 883 Mitchell Mountain Road, (formerly referred to as Route 1, Box 40) Haywood, Madison County, Virginia 22722.

2.    All mailings and communications discussed herein were sent to Jay Johnson and Margie Johnson at their home address in Madison County, Virginia.

3.    Defendants Robert M. Goldsmith and Catherine H. Goldsmith, of Pasadena and Glendora, California used and controlled various business entities as mere shells for their personal uses:

   a. California South Pacific Investors, a cancelled California Limited Partnership (aka, "California South Pacific Investors, LP", "CSPI", and "CESPI") Identification No. 198907200022, maintained its corporate records at its principal executive office at 140 South Lake Avenue, Suite 349, Pasadena, California 91101-4710;

   b. SIRA TECHNOLOGIES, INC., an active California corporation, Identification No. C1730094, maintains its

3

corporate records at its principal executive office at 140 South Lake Avenue, Suite 349, Pasadena, California 91101-4710;

c.  Biovigilance, an active California corporation, Identification No. C2184882, maintains its corporate records at its principal executive office at 140 South Lake Avenue, Suite 349, Pasadena, California 91101-4710;

d.  Infovigilance, renamed Biovigilance.

e.  ONOURIS INTERNATIONAL, INC., Identification No. C1265231 merged into and renamed SIRA TECHNOLOGIES, INC., maintained its corporate records at its principal executive office at 3452 E Foothill Blvd STE 460, Pasadena, CA 91107;

f.  SIRA TESTING SYSTEMS, renamed SIRA TECHNOLOGIES, INC.

g.  HAWAII CHEMTECT INCORPORATED, a dissolved California corporation, Identification No. CI722342, maintained its corporate records at its principal executive office at 140 South Lake Avenue, Suite 349, Pasadena, California 91101-4710;

3

h. HCI RESEARCH & TECHNICAL SERVICES, INC., a dissolved California corporation, Identification No. C1679693, maintained its corporate records at its principal executive office at 3452 E Foothill Blvd STE 460, Pasadena, CA 91107;

i. PACIFIC CHEMTECT CORP., renamed HAWAII CHEMTECT INCORPORATED;

j. SIRA Austral Asia, unknown incorporation status and address; and

k. TCIO, unknown incorporation status and address.

4. Defendants Robert M. Goldsmith and Catherine H. Goldsmith, of Pasadena and Glendora, California used and controlled these various business entities as a device or sham used to disguise their wrongs, obscure their fraud, or to conceal their crimes.

5. In September, 2001, Jay Johnson and Margie Johnson were solicited at their address in Madison County, Virginia to invest in California South Pacific Investors, a California Limited Partnership.

5

6.   The initial inducement to invest was a promise that they would receive a return of fifteen times their investment.

7.   Jay Johnson and Margie Johnson were sent a "CSPI Investor Detail" sheet with a cover sheet that stated they had "joined" on September 27, 2001 with a total investment of $25,000.00, and the description section stated: "Contributed with special consideration (15X return)". See attached Exhibit 1.

8.   With the "CSPI Investor Detail" they were given a letter titled "Acknowledgment and Receipt" from "Robert M. Goldsmith, President SIRA Technologies". See attached Exhibit 2.

9.   On October 4, 2001 Jay Johnson and Margie Johnson wrote to get a better confirmation of the terms of their investment than the terse phrase on their investor detail -- "Contributed with special consideration (15X return)".

10.   Although they had been solicited to invest in California South Pacific Investors, the response they received was an October 10, 2001 letter on SIRA Technologies letterhead from "Candace Brown Controller & Intellectual Property Manager" which said: "Thank you for your letter dated October 4, 2001. I am responding to your letter at Bob's request, as his schedule this

6

week has been overwhelmingly busy. Rest assured that your investment is recorded as a fifteen to one ratio return. This notation is made on your 'CSPI Investor Detail' sheet in the parentheses as '15X return'. This notation is legally binding and will be taken into account when your distribution amount is calculated." See attached Exhibit 3.

11.   They were thus promised a return of $375,000 on their initial investment of $25,000.00.

12.   On September 12, 2002, Robert M. Goldsmith, executed a "written Consent of Sole Shareholder of SIRA Technologies, Inc. to Amend and Restate Articles of Incorporation" in his capacity as Managing General Partner of California South Pacific Investors, a California Limited Partnership.

13.   One of the purposes of the Written Consent was the following: "The corporation shall have the authority to issue Sixty Million (60,000,000) shares of stock, of which Fifty Million (50,000,000) shares shall be common stock and Ten Million (10,000,000) shares shall be preferred stock ("Preferred Stock")." See attached Exhibit 4.

6

7

14.    Also on September 12, 2002, Robert M. Goldsmith and Catherine H. Goldsmith, executed a document titled "Resolutions of the Board of Directors of SIRA Technologies, Inc." in their capacity as directors. See attached Exhibit 5.

15.    Finally, on September 12, 2002, Robert M. Goldsmith and Catherine H. Goldsmith, executed a document titled "Certificate of Restated and Amended Articles of Incorporation of SIRA Technologies, Inc." in their capacity as President and Secretary, respectively. See attached Exhibit 6.

16.    On November 12, 2002, Jay Johnson and Margie Johnson were sent an unsigned "Memorandum" on CSPI letterhead addressed to "The CSPI Partnership" from "The General Partners". See attached Exhibit 7.

17.    The November 12, 2002 Memorandum stated that obtaining the thermal barcodes would "instantly enable us to sell licenses on a global scale and immediately realize very substantial initial licensing fees with up-front royalty payments."

18.    The November 12, 2002 Memorandum induced further investment by saying that:

> To enable delivery of the thermal barcodes in late December, we must pay the ink manufacturers 10,000

8

USD immediately and 10,000 USD upon delivery of the preliminary formula and thermal barcodes. We do not have the 10,000 USD at the moment, nor do we have an additional 25,000 USD to keep operations ongoing or the 10,000 USD to meet delivery payment tor the thermal barcodes. Respectfully, we need your assistance, thus we offer a 15-1 return on contributions arriving in our offices prior to December 5th,  which is the deadline for payment of rent and all other operational expenses.

19.   On the basis of that inducement, Jay Johnson and Margie Johnson invested an additional $5,000.00.

20.   On December 2, 2002, Jay Johnson and Margie Johnson were sent an signed letter on CSPI letterhead signed by "Robert M. Goldsmith, President", which stated: This correspondence is to confirm receipt of your recent partnership contribution in the amount of $5,000. The contribution is reflected in your updated database which is attached." See attached Exhibit 8.

21.   The "CSPI Investor Detail" sheet which was attached to the December 2, 2002 letter reflected the Johnsons' additional investment of $5,000.00 on November 21, 2002, and the description section stated: "Contributed with special consideration (15X return)". See attached Exhibit 8.

22.   They were thus promised a return of $75,000 on their second investment of $5,000.00.

9

23. Upon information and belief, no licenses were ever sold and no license fees were generated as promised in the November 12, 2002 Memorandum (Ex. 7), "instantly" or otherwise.

24. On January 17, 2003, Jay Johnson and Margie Johnson were sent a "Memorandum" signed "Bob" on CSPI letterhead addressed to "The CSPI Partnership" from "The General Partners". See attached Exhibit 9.

25. The January 17, 2003 Memorandum stated that:

> Our partnerships' Australia-based funding brokers arrive in Pasadena on January 25th… It is a central imperative of the group to convert a SIRA license into an entity to be named SIRA Austral Asia … From January 28th to February 3rd they have written, we will collectively come to binding instruments … Andrew Wilcox, through one client, is responsible for a payment of 1.5 million USD to be made payable to SIRA Austral Asia which will then be transferred to SIRA USA upon then exercising an existing option for the Austral Asia license. Their communications rellect that the 1.5 million USD transfer will take place no later than mid-February. … Richard Hill's organization is responsible for an additional 28.5 million USD, which will emit in four payments. … At this writing we would forecast a partnership-wide Pasadena meeting in late March soon after our return from our initial activity abroad.

26. Upon information and belief, the members/stakeholders/shareholders were never provided any further information for SIRA Austral Asia, nor an accounting for the $1.5 million USD.

10

27.   On May 27, 2003, Jay Johnson and Margie Johnson were sent a letter on SIRA letterhead to "The CSPI ("CESPI") Partnership", from "The General Partners" which stated:

> We tender the subject offer and the additional enclosure in the hope that as well as for crucial operational needs, they will dramatically accelerate funding required for travel to Philadelphia, Washington D.C. and Virginia. It is at those places that SIRA and Excel/Syus will be in negotiations to supply U.S. military needs for a shipping container security system (seen on our web) and meet "drop-dead" dates to hold on to our patents. ...Bob & Cathy have received only a handful of paychecks in months. ...The offer requires a minimum contribution of I0,000 USD and will emit an additional 5,000 shares of SIRA stock for each additional 10,000 USD you provide. The offer is limited to ten (10) 10,000 USD increments and is subject to withdrawal within 21 days.

(See attached Exhibit 9a.)

28.   The "CSPI Investor Detail" sheet dated 11/17/2004 reflected the Johnsons' additional investment of $10,000.00 on June 17, 2003, and the description section stated: "Contributed with special consideration (15X return) per partner letter dated 5/27/03". See attached Exhibit 20a.

29.   They were thus promised a return of $150,000 on their third investment of $10,000.00.

30.   Upon information and belief, no shipping container system was ever built, sold, or licensed, or if those actions did occur, the

11

members/stakeholders/shareholders were never provided any further information, no returns on their "investment", nor an accounting.

31. On August 12, 2003, Jay Johnson and Margie Johnson were sent an email addressed to "CSPI Partners" from Bob Goldsmith via his email address, rgoldsmith@siratechnologies.com . See attached Exhibit 10.

32. Bob Goldsmith's August 12, 2003 email to the "CSPI Partners" stated that:

> An investment banker, by way of Japan, with interest in Fuji Printing, came to our Pasadena offices. After hours of fat-free dialogue mutual agreement was reached that SIRA could avoid the extensive time, cost and labor a sale of our stock would entail, as would the Banker, if we both concentrated on making our first transaction a sale of a SIRA license in Japan. ... In a follow-up conversation with the bankers representative here in California, we agreed to a two million dollar initial license fee provided it is received by SIRA within 30 days of providing their Washington-based attorney with technical material specifically requested by them in writing. After 30 days the cost of that license to them would be four million dollars. Reality, as it permeates my desk, reflects that it would most likely become a license sale in about sixty days with enough mitigation favoring the banker to realise the license for the two million dollars. Please temper that by not forgetting additional manufacturer royalties will be ongoing to SIRA for years, as will a share of sub-licensees payments to the banker. ... It took my credit card and financial support from one partner to make a

12

real-life 11th hour save of our two seminal trademarks, the SIRA cube and the name BioVigilance.

33.     Upon information and belief, no SIRA license was ever sold in Japan for $2million or any other sum, or if that action did occur, the members/stakeholders/shareholders were never provided any further information, no returns on their "investment", nor an accounting.

34.     Further, the BioVigilance trademark application was abandoned on March 2, 2006 and it is now considered a "dead" mark.

35.     On October 13, 2003, Jay Johnson and Margie Johnson were sent an email addressed to "CSPI Partners" from "CSPI General Partners contactus@siratechnologies.com" .  See attached Exhibit 11.

36.     The General Partners' October 13, 2003 email stated that:

> The principal of the leading Arab/African distribution and security company in the Middle East, with offices throughout the region and Africa, will travel with SIRA to attend ... conferences because we have been chosen to present at both and we decided to enter partnering relationships at either applicable venue.
> Primary to his agenda is acquisition of SIRA distribution and. license rights in his entire germane geographic region. ...
> Agents for the oft-mentioned Japanese financier recently asked us to exert patience, "it is the nature of Japanese business" and last week notified us that a syndication to buy SIRA licenses has been organised "for sure".

13

37.    On December 2, 2003, Jay Johnson and Margie Johnson were

sent a "Partnership Memo" email addressed to "CSPI Partners"

from    Bob    Goldsmith    via    his    email    address,

rgoldsmith@siratechnologies.com . See attached Exhibit 12.

38.    The December 2, 2003, "Partnership Memo" email stated that:

> [I]f we collectively decide to survive, we must take our
> doings through delivery of the thermal barcode prototypes
> at the end of January and solidify agreements with
> Security International quite soon thereafter. As things are
> now, funds on hand and the prospects for acquiring more,
> portend stopping our motion prior to the 10th of this
> month.
> Understandably, I pray you will review the bonus stock
> schedule formulated by those two limited partners. Our
> fat-free budget to reach the end of January is $58,500
> dollars. Contributions of 500 dollars or 1,000 dollars by a
> willing group of CSPI partners may well carry us through.
> ....
> All I shall say is that I cannot cover, in any degree, the
> cost of making the thermal barcode prototypes, travel to
> meet Security International in Las Vegas or be sure of an
> office to bring them to in Pasadena without adequate
> contributions.
> It has been left to us all to make our position clear. As for
> me, clarity bites. The urban myth that I move the SIRA
> process from paycheck to paycheck in a Machiavellian
> process to eat and stay warm is disgusting. We have
> never drawn a paycheck to the detriment of SIRA
> operations and we have never realized more than a small
> fraction of our contracted salaries. I am on the hook for
> tens of thousands of dollars for SIRA credit cards that I
> guaranteed. ... I urge you, and surely with abiding

14

respect, to review the schedule those two limited partners crafted through their discussion with other partners.

39. The schedule he referred to was the schedule titled "FOR ACQUISITION OF BONUS STOCK" which was attached to December 2, 2003, "Partnership Memo" email (Exhibit 12). The schedule promised that an investment of $5,000.00 "pays 10 to 1 plus 2,500 shares of stock".

40. On the basis of those inducements, on December 8 2003, Jay Johnson and Margie Johnson invested an additional $5,000.00.

41. On December 15, 2003, Jay Johnson and Margie Johnson were sent a signed letter on SIRA letterhead signed by "Robert M. Goldsmith, President", which stated:

> Hello dear partner:
> Bless you for your contribution. ...
> [S]ubsequent to mailing the report we have been further endowed. ... a recent FDA mandate to confiscate and destroy all fishery products not packaged in specific high end polymer film, or with a thermal package monitor, brought the National Fisheries Institute (NFI), the FDA and WALMART to a particular university that has long pioneered food and fishery safety sciences. ... [W]hat the NFI, FDA and WALMART request of the university is to identify and test thermal package monitors and advise all three of those entities which should be adopted.... In their opening cover to us, along with a 64-page reason why they would be a valuable partner to SIRA, they state, "I (they) believe we should seek opportunities to work together". ... Cathy has closely assisted one of their most celebrated sitting professors during fishery conferences...

14

15

> Professors from the university informed us that they will
> now travel to the Intelligent Label Conference in Las
> Vegas with us. …
> Dear partner, the database reflecting your contribution is
> included herewith as well as the <u>issued</u> appropriate stock
> certificate attendant to it.
> (Underlining in the original.)
> See attached Exhibit 13.

42.    The December 15, 2003 share certificate enclosed with that

letter gave Jay Johnson and Margie Johnson 2,500 shares of

common stock in SIRA Technologies, Inc. It was signed by both

R.M. Goldsmith, President, and C.H. Goldsmith, Secretary. See

attached Exhibit 13.

43.    The "CSPI Investor Detail" sheet which was attached to the

December 15, 2003 letter reflected the Johnsons' additional

investment of $5,000.00 on December 8, 2003, and the

description section stated: "Contributed with special

consideration (10X return and 2,500 shares SIRA stock) per

partner letter dated 12/2/03". See attached Exhibit 13.

44.    They were thus promised a return of $50,000 on their fourth

investment of $5,000.00.

45.    On April 13, 2004, Jay Johnson and Margie Johnson were sent

an email titled "Annual Report & Financials" addressed to "CSPI

16

Partners"      from      "CSPI      General      Partners

contactus@siratechnologies.com" . See attached Exhibit 15.

46.    The April 13, 2004 Annual Report email stated:

> In our February 18, 2004, memo we mentioned a military command that, after reviewing all systems available, had chosen SIRA to assist them in developing and marketing a sensor that would be mated to our port security monitoring system. ... Therefore we have entered into an agreement with the command to interface our system with theirs. ...
>
> Added to this will be marketing of other advanced research their science team is making available. This will bring into play several of our patents that we developed for food safety and thereby enable our provision of the extremely simplified tests that the military has long petitioned SIRA to create. ...
>
> We have physically received our irreversible ink that becomes an active monitor/alarm at 165°, the thermal threshold appropriate for pharmaceuticals, biologicals and medical devices. ...
>
> As you know, the DoD jointly announced with SIRA that they will use our transinformative barcodes with 80° and 40° ink and apply them to all thermally-sensitive supplies for their own use as well as for their industry suppliers. ...
>
> The following is a list of the patents and trademarks we have receded during fiscal year 2003
>> The SIBA Trademark in 17 courtries
>> The SIRA Cube Trademark in 2 countries
>> The SIRA Transinformative Barcode in 3 additional countries
>> An additional Transinformative Barcode in USA
>> The REM in Japan

47.    Upon information and belief, no agreement was ever made with

a   military   command   to   interface   SIRA/CSPI's   port   security

16

17

system with theirs, or if that action did occur, the members/stakeholders/shareholders were never provided any further information, no returns on their "investment", nor an accounting.

48.    In addition, April 13, 2004 Annual Report email stated:

General Partner Duane Femrite and Attorney Ellis Wasson are currently working on a plan whereby, upon SIRA becoming a stand-alone company, stock will be issued to all partners commensurate with the amount of their investment. This is a very desirable precursor to SIRA going public. To accommodate payouts of more than 5-1 to those of you who have made special circumstance contributions, a formula will be established by which the General Partners will dramatically reduce their share of income in excess of the Agreement's 5-1 and will not return to parity with the Limited Partners until all such special circumstance payouts are retired. In that regard, not a penny of monies distributed to the Limited Partners will be used for special circumstance payouts.

49.    SIRA did not then, nor has it ever, gone public.

50.    On May 13, 2004, Jay Johnson and Margie Johnson were sent an "Update & Need-to-Know" Memo from by "Bob Goldsmith, MGP", (See Exhibit 16) which stated:

In preparation for the transition of CSPI into SIRA, the General Partners have reached consensus to retain the services of an efficient and competent appraiser to determine the value of CSPI. …In regard to SIRA's launch to initial and ongoing delivery of product: of all the potential commercial relationships that came to us directly from companies desirous of obtaining our first available

18

product, an Italian company is surely the most compatible and able. More importantly, they are as flexible as they are desirous of coalition. ...SIRA earned its place in the transaction as a beneficiary of military coalescence and the company based in Rome, as a component of a conglomerate, is a techno-dollar associate of the first order....

We can only pray that upon comprehending the joint SIRA/Italian communications you will not consider the attached patent maintenance schedule and transaction closing budget a cold shower. The patent material, as you will see, is the 2001 second quarter maintenance annuities (International mandated maintenance fees) for **our** key patents. These fees are required months in advance and it pains me to point-out that we are already in the second quarter and have not paid them.

...To keep our patents and enable operations past Monday, May 17, 2004 and fund the SIRA portion of the dosing stage in Italy, the budget is 125,000 USD.

Our offer to you to enable SIRA to demonstrate its value is a 7-1 return on contributions of 1-5000 USD/10-1 on contributions of 10,000 USD / 15-1 on contributions of 20,000 USD / contributions of 25,000 USD at 15-1. Contributions of 50,000 USD will also be at 15-1, however, there will be an additional incentive of 25,000 shares of SIRA stock.

(Emphasis added.)

51.   No appraisal of the value of CSPI has ever been given to Jay Johnson and Margie Johnson or, to their knowledge, any of the other members/stakeholders/shareholders, or if that action did occur, the members/stakeholders/shareholders were never provided any further information, no returns or repayment of any of their "investment", nor an accounting.

19

52.   On July 27, 2004, Jay Johnson and Margie Johnson were sent an "Update" Memo on SIRA letterhead from "The Partnership's General Partners" to "The CSPI Partnership", (see attached Exhibit 17) which stated:

> The General Partners have consistently understood the need for, and remain empathetic to, the limited partners' need to know...When will the Partners experience income?
> ....
> SIRA has two products.
> The Shipping Container Security System, which is now ready for distributors to acquire.
> The Food Sentinel System, which will be market ready when a green light is flashed from the world's second largest ink manufacturer to the Department of Defense (DoD).
> ....
> While genuine competition remains at least 1 - 2 years away, we will be distributor ready [for The Shipping Container Security System] in a few months and, to easily defend income projections to financial institutions, we chose to continue tethered to the 5% annual market share projection.
> In that regard, we remind the partners that a potential 900,000 unit order is in discussion with the projected distributor in Italy who will execute his distributor agreement in August.
> ....
> If you decide to contribute from 500 to 10,000 USD, your database will reflect a consideration of 12-1. Should you want to contribute more than 10,000 USD please call Bob to discuss an applicable increased ratio of return.

53.   On the basis of those inducements, on August 1, 2004, Jay Johnson and Margie Johnson invested an additional $1,000.00.

20

54.   The "CSPI Investor Detail" sheet dated 11/17/2004 reflected the Johnsons' additional investment of $1,000.00 on August 1, 2004, and the description section stated: "Contributed with special consideration (12X return)". See attached Exhibit 20a.

55.   They were thus promised a return of $12,000 on their fifth investment of $1,000.00.

56.   Upon information and belief, the Shipping Container Security System has never been ready for distributors to acquire, or if that action did occur, the members/stakeholders/shareholders were never provided any further information, nor repayment of any of their "investment", nor an accounting.

57.   Upon information and belief, the Food Sentinel System has never been made market-ready, or if that action did occur, the members/stakeholders/shareholders were never provided any further information, nor repayment of any of their "investment", nor an accounting.

58.   On September 1, 2004, Jay Johnson and Margie Johnson were sent a "Follow-up" Memo on from "CSPI General Partners" to "CSPI Partners", (attached Exhibit 18) which stated:

   [W]e are now providing you with dates for ink delivery and

associated sales of SIRA Transformative Thermal Barcodes ... Translated: from day one of sales commencing late in the first quarter of 2005, our products will be sold on a global basis by long-entrenched marketing specialists whose very client roster would be hyper-substantial to what SIRA would be compelled to reach on our own.

... The often-embellished [Italian] contract... was received in early August. It was sent one day <u>after</u> Elea closed for the annual Euro August holiday. This week, 20 days hence, a time impossible to contact them, they returned and promptly asked it everything was OK? ... Randy Thompson will go to Rome with a 2-foot container model to demonstrate the BioVigilance Security System wirelessly transmitting from Rome to Oklahoma and back to Rome in seconds. ... Please note that Elea and its parent telecom company are jointly developing future configurations with SIRA. ...Since Federal guidelines discourage or banish foreign-made container security products and Elea actually supplies the Italian Coast Guard with communication modules that the U.S. has adopted, the SIRA/Elea coalition promises more than a modicum of Euro-purchasing loyalty.

59.    Upon information and belief, sales were not commenced in the first quarter of 2005 or ever. If that action did occur, the members/stakeholders/shareholders were never provided any further information, nor repayment of any of their "investment", nor an accounting.

60.    On October 14, 2004, Jay Johnson and Margie Johnson were sent a Memorandum on from "The Partnership's General Partners" to "The CSPI Partnership", which contained an

22

income projection and which said "nothing within the report could, or should, be characterized as a call to duty or a prayer for operational alms."

61.   The October 14, 2004 income projection stated that SIRA would make $7.16 million in the fiscal year ending September, 2005 and $152.7 million in the fiscal year ending September, 2009. See Exhibit 19.

62.   SIRA did not make any money in the fiscal year ending September, 2005, and certainly not $7.16 million.

63.   SIRA did not make any money in the in the fiscal year ending September, 2009, and certainly not $152.7 million.

64.   SIRA/CSPI has never made any money, or if that action did occur, the members/stakeholders/shareholders were never provided any further information, nor repayment of any of their "investment", nor an accounting.

65.   Two weeks later, on November 11, 2004, Jay Johnson and Margie Johnson were sent a Memo on CSPI letterhead addressed to "The CSPI Partnership", with the subject heading, "Due to Pending loss of Barcode Patents throughout Europe

23

and Scandinavia" from "The    General Partners offer an

Extraordinary Opportunity", (attached Exhibit 20) which stated:

> [L]ate yesterday we were advised by the law firm handling
> our patent work that due to sick leave tor his associate
> who managed our patent portfolio, who previously and
> consistently rang the alarm when we fell behind in paying
> out maintenance fees, we face a DROP DEAD
> DEADLINE OF 11-17-04 TO PAY THOSE FEES FOR
> ALL OF EUROPE AND SCANDINAVIA. IF WE MISS
> PAYING ON OR BEFORE THAT DATE THE PATENTS
> WILL LAPSE.
> To assure ready contributions in time to cover our critical
> needs, we offer:
>> FOR EACH DOLLAR OF CONTRIBUTIONS OF
>> 1,000 USD (ONE THOUSAND USD) OR MORE,
>> WE WILL CREDIT THE CONTRIBUTOR'S
>> ACCOUNT FOR A 15-1 RETURN AND, ONE
>> SHARE OF STOCK FOR EACH DOLLAR
>> CONTRIBUTED.
> (Capitalization in the original.)

66.   On the basis of those inducements, on November 16, 2004, Jay

Johnson and Margie Johnson invested an additional $2,000.00.

67.   On November 18, 2004, Jay Johnson and Margie Johnson

were sent an email signed by "Bob" titled "All is well with those

patents" addressed to "CSPI Partnership" from "CSPI General

Partners  contactus@siratechnologies.com"  .  See  attached

Exhibit 21.

68.   The November 18, 2004 email memo stated:

> The General Partners herewith give great thanks for your lightning response to our 11-11-04 urgent call for financial support The patents in Europe and Scandinavia are secure. Praise be on high for their safety and equally so for our close associates here and abroad who are gathering two additional lots of thermachromic ink to support our barcode intellectual property. ... For those partners who called in having been unable to respond with contributions in the quick fashion needed but wanting to take advantage of the offer, perhaps there are others who felt the same, we'll keep the opportunity open for 10 days from the date of this communication.

69.    On December 7, 2004, Jay Johnson and Margie Johnson were sent a signed letter on California South Pacific Investors letterhead signed by "Robert M. Goldsmith", which stated:

> Dear Jay & Margie:
> We send our heartfelt gratitude for your rapid response and partnership contribution to keep the partnership's patents secured In compliance with the offering, your contribution will have a 15X return and as well as SLRA stock. Enclosed are your updated investor reports for your records and review as well as a stock certificate issued to your benefit in the amount of one share of SIRA stock for each dollar of contribution.

70.    The November 30, 2004 share certificate enclosed with that letter gave Jay Johnson and Margie Johnson 2,000 shares of common stock in SIRA Technologies, Inc. It was signed by both R.M. Goldsmith, President, and C.H. Goldsmith, Secretary. See attached Exhibit 22.

25

71.    The "CSPI Investor Detail" sheet which was attached to the December 7, 2004 letter reflected the Johnsons' additional investment of $2,000.00 on November 16, 2004, and the description section stated: "Contributed with special consideration (15X return and 2,000 shares SIRA stock) per partner letter dated 11/11/04". See attached Exhibit 22.

72.    They were thus promised a return of $30,000 on their sixth investment of $2,000.00.

73.    On January 20, 2005, Jay Johnson and Margie Johnson were sent an email Memorandum signed by "Bob" titled "Meeting with Flint rescheduled" addressed to "The CSPI Partnership" from "Bob Goldsmith ". See attached Exhibit 24.

74.    The January 20, 2005 Memorandum stated:

>    [W]e submitted material to a financial house specializing in forming exclusive investment trusts for organizations or fraternal groups. This financial house seeks and receives progress reports from Bob regarding SIRA and believes a newly forming trust will be able to emit a substantial money allotment to SIRA by the end of March. The form and numerics of the allotment will most likely involve stock.
>
>    ....
>    Over the last few years, an already modest pay schedule has shrunk dangerously. Stress-related profound arthritis is a way-of-life and I am often compelled to contemplate mortality.

26

75.   Upon information and belief, no "substantial money allotment" was made to SIRA by the end of March, 2005. If that action did occur, the members/stakeholders/shareholders were never provided any further information, nor repayment of any of their "investment", nor an accounting.

76.   On February 9, 2005, Jay Johnson and Margie Johnson were sent a letter on California South Pacific Investors letterhead signed by "Bob", from "Bob Goldsmith" to "CSPI Partnership". See attached Exhibit 25.

77.   The February 9, 2005 letter stated:

> Partners, since my last report to you, I received a total of four phone calls from the partnership. Two resulted in 10,000 USD contributions...
> The 20,000 USD was dispersed for patents & trademarks that would lapse without payment, additional legal needs, sundry overdue bills and with the direct forbearance of our contract consultants, who passed on several SIRA pay-out schedules to them to assure that 3 of us here at the office received a paycheck.
> As we write, we cannot pay any other bills and surely cannot travel past San Diego, let alone to Michigan, Washington, D.C. and back.
> ....
> As much as anxiety, arthritis, death in the family, again, has caused lost personal days at my desk, I continually, from wherever I am, make personal contact to past working history associates and new interested parties in regard to funds. However, my depreciated health causes depreciated presentation.

78. Upon information and belief:

    a. SIRA Technologies had a trademark application on the typed drawing "SIRA" which was abandoned on January 30, 2005 and is now considered a "dead" mark; and

    b. SIRA Technologies had a "design only" trademark application on what Robert Goldsmith has referred to as "the SIRA cube". The application was abandoned on February 6, 2005 and is now considered a "dead" mark; and

    c. SIRA Technologies had a trademark application on the typed drawing "Biovigilance" which was abandoned on February 6, 2005 and is now considered a "dead" mark; and

    d. SIRA Technologies had a trademark application on the typed drawing "Food Sentinel System" which was abandoned on February 20, 2005 and is now considered a "dead" mark; and

    e. SIRA Technologies had a trademark application on the trademark "Biovigilance" which was abandoned on March 2, 2006 and is now considered a "dead" mark.

28

79.    On March 10, 2005, Jay Johnson and Margie Johnson were sent a letter on California South Pacific Investors letterhead signed by "Bob", from "Bob Goldsmith contactus@siratechnologies.com " to "CSPI Partnership". See attached Exhibit 26.

80.    The March 10, 2005 letter stated:

> [W]e have emphasized our intent to manage the process by enlisting a personal family member long in history with Flint as the president of a chemical company that provided ink-necessary chemicals. He is on a first-name basis with all Flint management from its apex to middle level. Rich Hoster (Hoster is Cathy's maiden name) is retired in Chicago and would likely opt for SIRA shares to hold him close as opposed to non-existent cash.
> ....
> In regard to shipping container systems, months ago, we accepted the clarity that SIRA had become a metaphorical financially-frost-bitten operation. Frost bitten life forms surrender extremities to save the core of their essence. The approach at SIRA included commercial cryogenics and the container security system was placed in deep freeze so the transinformative barcodes could endure.
> ....
> The SIRA approach is based on disciplines of supply and demand and incorporates a marketing principle so attractive and proven that a recent contact from the Middle East sparked SIRA to bring the streamlined container security system out of hibernation.
> ....
> The current global inventory of containers hovers around 13-15 million units.... The current container inventory is predominantly owned by Middle Eastern companies, followed in volume by Asian interests.

29

....

Accepting that a system will sell for 145 USD has sufficient utility, the holders of large inventories of containers want to acquire them.

....

What the recent petitioner seeks at this writing is distribution throughout the Middle East and Africa. That would leave all of Europe to our ally in Italy who themselves have been pushing the same supply/demand, low-cost scenario.... For the new Middle-Easterner to acquire that distribution, affecting owners of millions of containers, they offer front monies for development and operations as we at SIRA perceive an amount necessary, a distributorship reservation fee, and travel to, in, and from Cairo to demonstrate the system and execute International Chamber of Commerce (ICC) Agreements between the parties.

....

After the very last report went out, only two partners provided financial support, again. Because we believe that 250,000 USD will carry us through, allowing for blips, i.e. — Flint and the AAP, I put forward a plan to the GPs to find a single investor with a ready 250K to acquire 5% of SIRA stock. It was accepted. Frost bite planning for sure.

We are not discounting Shot Financial's commitment to provide 2.5 million USD at the end of this month. Bob Sargent considers that process on schedule and relates that Dan Horan, Shot's President, will soon travel to Pasadena.

Nonetheless, our current cash position is negative, we must expediently tend to needs (before D&B paints us red) and not fail to be sufficiently cash-liquid to meet the demands of formalizing documents with Flint, the University, pay attorneys to expediently provide instruments to pre-sell blanket licenses to international brands and then discount those licenses to a factoring banking institution to assure earliest partnership-wide distribution of monies.

30

Interestingly, moments after that 250K-for-5%-plan was adopted, one of those key contributors, for the 2nd time in succession, came to the office. His total contribution for those two responses was 35,000 USD.

Once more, we went from having no prospect of meeting scheduled office rent and no hope of holding on to patents or operations of any kind, to getting past end-of-the-month, first of-the-month bills and keeping our patents in our possession. If you sense seamless fire-drills relevant to holding onto patents, there is a reason. To prevent having a third patent firm drop our account and surely collapsing us, we agreed to pony-up 15,000 USD and release patent trust monies in the amount of 14,000 USD to lower a six-figure debt to the firm.

....

Since one of the three partners contributed 35,000 USD of the total 46,500 USD contributed after those last two reports, he left this office with an ear-marked 15-1 return when monies are available, one share of stock for each doiiar contributed AND a document allocating 0.7 percent of SIRA Technologies to his partnership account. A windfall profit on his investment, more than any ever before? ....indeed, and deserved.

....

I am not insensitive to the partners' angst at what you see as promise after promise slipping and sliding away.

81.  Upon information and belief, no shipping container system was

ever sold or licensed in the Middle East, Asia or Africa by

SIRA/CSPI.   If   that   action   did   occur,   the

members/stakeholders/shareholders were never provided any

further information, nor repayment of any of their "investment",

nor an accounting.

82. On April 13, 2005, Jay Johnson and Margie Johnson were sent a letter on SIRA letterhead from "Bob Goldsmith, Managing General Partner" to "The CSPI Partnership". See attached Exhibit 27.

83. The April 13, 2005 letter stated:

> Flint Ink and our University Partner* will execute a Joint Development Agreement    (JDA) on April 25m followed by consummation of a SIRA/FLINT/University agreement during the 26th-28th of April.
>
> ....
>
> Execution of the 3-way agreement portends SIRA success in acquiring operating funds from our bank and meaningful cash infusion from several prominent local individuals who are very interested to participate and infinitely capable of so doing, provided there is evidence that SIRA will partner with entities capable of producing the required ink.
>
> ....
>
> AL-DAWLIYAH MARKETING -- This is the previously noted Cairo & Libya based marketing firm that has recently acquired numerous Middle East and Africa durable goods distributorships. ... The firm has main offices in Cairo and the principal of the firm continually communicates with SIRA from Libya, a country that has been excused from trade embargoes in return for good behavior (absent their recent retreat from paying compensation for the Pan Am tragedy).
>
> ....
>
> After constant etransmissions to smooth out details, we sent the enclosed proposal and in all likelihood Randy Thompson will travel to Cairo at Al-Dawliyah's expense in the near, perhaps very near, future.
>
> Upon examining the proposal you will note reference to a 2 million-unit order, as well as the reasoning to compel such a substantial quantity. The profit math is there and

> not so to generate saliva. The strategy is simple and doable at both ends of the transaction.
> It is not at all complicated, just a cash rich in & out opportunity should all go as perceived and the perception is in minds other than those here at SIRA.
> ....
> The previous partner funding offer is extended until further notice from the 3-31-05 closing date in hope of enabling scheduled vendor payables and to assure the very soon coming travel to Flint.

84.  The April 13, 2005 letter contained the "Development Proposal for Al-Dawliyah Marketing". See Exhibit 28.

85.  The "Development Proposal for Al-Dawliyah Marketing" stated:

> Bio Vigilance™, a SIRA Technologies progeny company, from genesis was organized to create methodologies, protocols, and systems to thwart pernicious intent (terrorism in particular).
> ....
> SIRA perceives a two-year window to create a market parallel to the world of BAA 04-06. This parallel market is based on the very economic product that is BioVigilance. We look to market, through our main distributor network...Al-Dawliyah    Marketing...2,000,000    units; 2,000,000 units that will create the de-facto industry standard before the BAA 04-06 progeniture can succeed (a success which is no sure wager).
> ....
> Distributor License Fee 200,000.00 USD
> Order Quantity          500,000 units
> Monthly Fulfillment      20,833  units

86.  As stated above, no shipping container system was ever sold or licensed in the Middle East, Asia or Africa by SIRA/CSPI, or if

33

that action did occur, the members/stakeholders/shareholders were never provided any further information, nor repayment of any of their "investment", nor an accounting.

87.   On April 30, 2005, Jay Johnson and Margie Johnson were sent a letter on California South Pacific Investors letterhead from "Bob Goldsmith, MGP" for "Advisory to the CSPI Partners, Action Alert to the General Partners". See attached Exhibit 29.

88.   The April 30, 2005 letter stated:

> [I]n response to advice from our legal counsel, we moved the date to enter agreement with Flint Ink to May 5, 2005. All reservations have been made and air tickets are in hand. The date change was necessitated by the absence of must-have language for SIRA in agreements provided by Flint two days before our original scheduled trip.
>
> ....
> Yet, due to operational monies as tight as a rodent's rump,... we will not, as planned, be able to go to the bank for a credit line, legally apply for available federal funds, nor be able to generate provisional letters of credit frorr, national brand buyers to discount for ready cash. We forecast that enabling date to be the 15[th] of May and perhaps as late as an additional week.
> We are flat broke and would have been in a negative, cavernous cash hole were it not for a 5,000 USD infusion from one of the group I reverently noted in the last paragraph of my last report. ... The collective 250,000 USD for 5% of SIRA offered in those last 3 reports, is 105,000 USD short of the goal established as required to bring us to perpetual solvency. Patent maintenance fees are upon us again...
> Flint is in. ... SunChem & SIRA devised a manufacturing protocol, and a protocol covered by our patents, ... Due to

34

> counsel from our relationship at the FDA, we are jubilant
> that a pre-market approval is not required (or the protocol
> and design.
> Rubbermaid management advise they will travel to
> Pasadena. They may have emphasized with follow-up
> communications what we perceived on their first contact,
> their intent to make SIRA their 34[th] commercial entity. …
> Please seriously consider what benefit a contribution at
> this time will generate tor you and what standing on the
> sidelines of the partnership at this time portends.

89.   Upon information and belief, Rubbermaid did not make SIRA
      their 34th commercial entity. If that action did occur, the
      members/stakeholders/shareholders were never provided any
      further information, nor repayment of any of their "investment",
      nor an accounting.

90.   On June 9, 2005, Jay Johnson and Margie Johnson were sent
      a letter on SIRA letterhead from "The CSPI General Partners"
      to "The CSPI Partnership". See attached Exhibit 30.

91.   The June 9, 2005 stated:

> This past week Cathy gathered with several hundred
> members of R&DA in Louisiana. Steve Moody, head of
> the Military Feeding Directorate was a regular talk-buddy
> …to reaffirm a SIRA plenary presentation at the R&DA
> October science meeting during a session dedicated to
> RFID. These two assemblies are segments of a planned
> SIRA intro-blitz which began with a very recent trip to Flint
> Ink in Michigan, and also includes a June 20-27 stay in
> D.C. for funding and from there, time at SunChem in New
> Jersey, possibly in tandem with the University that
> developed those extraordinary ink pigments. The primary

34

purpose of visiting SunChem is to advance the B. Braun project.

....

GP Duane Femrite, Cathy Goldsmith and I traveled to Flint Ink a few weeks back and ... had I stayed in Pasadena, not a lost iota of benefit to SIRA Technologies would have been experienced. ...

An agreement in principal was fine tuned by both sides at a follow-up day-long meeting then sent to Flint legal for appropriate language in preparation for the SIRA legal team to sanction. Subsequently, Flint... asked for an alteration of previously agreed upon language....

Flint requested a modest interval to formulate language to mollify SIRA.

....

The SIRA/Flint agreement is but a few days in coming and includes several additional benefits for SIRA provided by Flint in lieu of apology, candy and flowers.

During the recent R&DA conference,... Jim Fagan, the Executive Director of R&DA, as moderator of the panel, addressed the plenary. He began by praising the multi-year presence of SIRA within the R&DA and Cathy's service on their board. He emphasized that SIRA had given notice that an extraordinary ink technology was coming to fruitier for incorporation in cur transinformative barcodes.

... The dialogue between Cathy and many executives from industry that had begun in the welcome reception on the eve of the conference, grew in size, as would be anticipated, after Moody and Fagan gave the message that SIRA would be ready, soon.

One day ago we transmitted a "pre-conferral" document to a ranking member of the USDA appropriations committee, long a valued, openly ardent supporter of SIRA. When our champion Congressional office confirmed with her that SIRA would indeed he in D.C. the week of June 20th, she... willingness to award funding. ...

Funding sought by SIRA is a tad above one million USD including over 200 thousand to meet demands of our overhead.